37046. CITIZENS & SOUTHERN NATIONAL BANK et al. v. YEAGER ENTERPRISES, INC. et al.

PER CURIAM.

The instant case is before this court by writ of certiorari. See *C. & S. Nat. Bank v. Yeager Enterprises,* 156 Ga. App. 341 (274 SE2d 730) (1980). We reverse.

Appellant C. & S. filed a complaint alleging an indebtedness on the part of Yeager Enterprises, Inc., maker of a note, and George Yeager, Erma Yeager and Gigi's of DeLowe, Inc., guarantors of the note. Both Yeager Enterprises and the guarantors raised the defense of fraud.

The Yeagers are the sole officers and stockholders of Yeager

Enterprises. It is undisputed that after certain notes and guarantees were executed, the Yeagers learned of the actions which, they assert, constitute fraud. Negotiations ensued which culminated in a consolidated renewal note signed by the Yeagers on behalf of Yeager Enterprises. Payments were made under this note from August 1977 until January 1979. This action was instituted after payments ceased.

The liability of Yeager Enterprises is not at issue in this case. Rather, we are concerned with the liability of appellees on their individual guaranty agreements. The guaranty agreements contain the following provisions: "This guaranty shall be continuing, absolute and unconditional and shall remain in full force and effect as to the undersigned, subject to discontinuance of this guaranty as to any of the undersigned (including, without limitation, any undersigned who shall become deceased, incompetent or dissolved) only as follows: Any of the undersigned, and any person duly authorized and acting on behalf of any of the undersigned, may give written notice to the Bank of discontinuance of this guaranty as to the undersigned by whom or on whose behalf such notice is given, but no such notice shall be effective in any respect until it is actually received by the Bank and no such notice shall affect or impair the obligations hereunder of the undersigned by whom or on whose behalf such notice is given with respect to any Liabilities existing at the date of receipt of such notice by the Bank, any interest thereon or any expenses paid or incurred by the Bank in endeavoring to collect such Liabilities, or any part thereof, and in enforcing this guaranty against such undersigned. Any such notice of discontinuance by or on behalf of any of the undersigned shall not affect or impair the obligations hereunder of any other of the undersigned.

*"The Bank may, from time to time, without notice to the undersigned . . . (c) extend or renew for any period (whether or not longer than the original period), alter or exchange any of the Liabilities, . . ."* (Emphasis supplied.)

The trial court denied appellants' motion for summary judgment on the guaranty agreements, holding that appellees "as guarantors on the notes in question, have not, as a matter of law, waived [their] defenses . . . based on fraud and failure of consideration . . ." The Court of Appeals granted appellants' application for interlocutory appeal and affirmed. We granted certiorari to determine whether appellees, as individual guarantors, are estopped, as a matter of law, to assert a defense as to which they had knowledge when they signed a renewal note for Yeager Enterprises in their corporate capacities.

As noted by the Court of Appeals, " '[i]n law, (defendants-guarantors) and the corporation are entirely separate and distinct

entities.' [Cits.]" *C. & S. Nat. Bank v. Yeager Enterprises,* supra at 343. This is not to say, however, that the realities of the situation are to be ignored. The individuals who signed the renewal notes in this case were *the same individuals* who signed the guaranty agreements. All of the guaranties provide that they are continuing until discontinued in writing and that they apply to all renewals of the underlying obligations. It is uncontroverted that the guaranties were not discontinued in writing. Appellees concede that the actions upon which the fraud defense is based were known prior to the execution of the renewal note.

In *National Duck Mills v. Catlin & Co.,* 10 Ga. App. 240 (73 SE 418) (1911), the Court of Appeals held that the rule of "estoppel by silence" applied "where one party to a contract, when the day has come on which the other party can call him to a settlement, fails to set up any counter-claim under the contract, and (in order to get an extension of time payment) makes an unqualified and unconditional promise to pay such other party the full amount of his claim." Id. at 244. Thus, in the instant case, the trial court held as a matter of law that the defense of fraud was unavailable with respect to the underlying corporate obligation.

We see no reason why the rule of "estoppel by silence" should not be applied to the guarantors of the obligation of Yeager Enterprises. For, under the circumstances presented, we do not believe it can be seriously disputed that appellees' silence with respect to the guaranty agreements was tantamount to an outright affirmance of them.

Appellees must be held to know the terms of the guaranties they had signed. See *Musgrove v. Musgrove,* 213 Ga. 610, 612 (100 SE2d 577) (1957). Given these terms and the fact that the individuals who signed the original and renewal notes as officers of the corporation are the same individuals who signed the guaranty agreements, we believe any reasonable person would consider the renewal of the underlying obligation, coupled with silence regarding the guaranties, an "acknowledgment of the righteousness of [appellant's] claim" as to both. *National Duck Mills v. Catlin & Co.,* supra at 246. "[T]o be injured, [one] would ordinarily have to be ... ignorant of the common dictates of honesty and fair dealing between men, which would of necessity deter the upright man from misleading the other party ... by [implicitly] promising to pay [under the guaranties] at a future date, without any intimation of subsequent intention to repudiate his promise ..." Id. at 246.

By their silence at the time of the renewal of the corporate obligations, appellees, as guarantors, are estopped as a matter of law from asserting defenses of which they then had knowledge. The

judgment of the Court of Appeals is therefore reversed.

*Judgment reversed. All the Justices concur, except Undercofler, Smith and Gregory, JJ., who dissent.*

DECIDED JUNE 30, 1981 —
REHEARING DENIED JULY 14, 1981.

*Stagg, Wildau, Simpson, Hoy & Oakley, Susan Hoy, Alston, Miller & Gaines, Robert D. McCallum, Jr.,* for appellants.
*Harold D. Corlew, Leon L. Rice,* for appellees.

SMITH, Justice, dissenting.

I wholeheartedly agree with the Court of Appeals and the trial court that *National Duck Mills v. Catlin & Co.,* 10 Ga. App. 240 (73 SE 418) (1911) is inapplicable to the case at bar insofar as defenses to the individual guaranties are concerned. The judgment of this court can only be explained on the basis of some heretofore nonexistent rule, which, in my view, unduly expands the meaning of the term "estopped as a matter of law." I respectfully dissent.

The majority recognizes the obvious: *National Duck Mills* is factually distinguishable from the case at bar in that appellees are attempting to assert defenses as guarantors of renewed obligations, not as makers. It believes, however, that such a distinction should not lead to a different result since 1) appellees themselves are responsible for the execution of the renewal note by the corporation and 2) the guaranty agreements signed by appellees expressly applied to renewals of the underlying obligation. I cannot agree.

The notion of "estoppel by silence" presents a basic question: silence regarding what? In *National Duck Mills,* the "silence" which gave rise to the estoppel was *silence regarding defenses* to the note which had been renewed. In the case at bar, the term "silence" has a far different meaning — it encompasses not only appellees' failure to raise defenses to the guaranties at the time the underlying obligations were renewed, but also their failure to raise the guaranties themselves at a time when negotiations centered on the underlying obligations. To hold that the rule of *National Duck Mills* applies in the latter situation is to distort the case beyond all recognition. We therefore must examine the soundness of the "Yeager Enterprises" rule.

In my view, this newly fashioned rule does not stand scrutiny. On motion for summary judgment, "the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *H & H Wholesale*

*Supply Co. v. White,* 127 Ga. App. 707 (194 SE2d 609) and cits." *Davis v. Dickson,* 232 Ga. 338, 339 (206 SE2d 473) (1974). "[W]here the facts relied on to establish the estoppel do not unequivocally show an estoppel in pais, the jury, and not the judge, should determine whether the facts constitute such an estoppel." *Tune v. Beeland,* 131 Ga. 528 (3) (62 SE 976) (1908); *Vines v. Citizens Trust Bank,* 146 Ga. App. 845, 848 (247 SE2d 528) (1978).

It is entirely consistent with the allegations of the complaint and the evidence that appellants' sole concern with regard to the renewal note was to salvage a series of agreements (i.e., the existing notes) which, due to fraudulent conduct on the part of certain bank employees, were subject to attack. The fact that different agreements (i.e., the guaranties) were not discussed at the time of the renewal of the *corporate* obligations does not *unequivocally* show an affirmation of them. The bank, of course, could have obtained a clarification of appellees' position with regard to the guaranties. However, it was silent too.[1]

As indicated above, the majority also attaches great significance to the fact that the guaranty agreements signed by appellees expressly apply to renewals of the underlying obligations. The terms of the guaranty agreements, the argument goes, place appellees in the same position as *guarantors* of the corporate obligation that they occupy as *makers* of the renewal note on behalf of the corporation. I must reject this analysis because it presupposes the validity of the guaranty agreements. If appellees' fraud defense is meritorious, the

---

[1] " ' "Since the whole doctrine [of estoppel] is a creature of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted in good faith and reasonable diligence; otherwise no equity will arise in his favor." 2 Pomeroy's Equity Jurisprudence (4 Ed.) § 813.' *Johnson v. Ellis,* 172 Ga. 435(5) (158 SE 39). Estoppels are not favored. Code § 38-114; *Parker v. Crosby,* 150 Ga. 1 (102 SE 446); *Cobb County Rural Elec. Mem. Corp. v. Bd. of Lights &c.,* 211 Ga. 535, 539 (87 SE2d 80); *Travelodge Corp. v. Carwen Realty Co.,* 223 Ga. 821, 823 (1) (158 SE2d 378); *Yancey v. Harris,* 234 Ga. 320." *Perimeter Development Corp. v. Haynes,* 234 Ga. 437, 440 (216 SE2d 581) (1975).

Had new guaranty agreements been signed by appellees or had the existing ones been expressly ratified, I would have no hesitation in finding an "estoppel by silence" as a matter of law. The rule that the renewal of a contract "cuts off all defenses of which the maker then had knowledge [and failed to reserve]" *(Coast Scopitone, Inc. v. Self,* 127 Ga. App. 124, 127 (192 SE2d 513) (1972)), has been consistently applied against a party to a contract *where the suit is on the contract that has been renewed.* See *Yawn v. Powell,* 146 Ga. App. 554 (246 SE2d 737) (1978); *Ameagle Contractors, Inc. v. Virginia Supply &c. Co.,* 144 Ga. App. 477 (241 SE2d 594) (1978); *Massey v. Electrical Wholesalers, Inc.,* 137 Ga. App. 829 (224 SE2d 811) (1976). This, however, is not such a case.

renewal provisions of the guaranty agreements would not be binding. See *Thompson v. Wilkins,* 143 Ga. App. 739, 740 (240 SE2d 183) (1977). " '. . . Whether a note or other writing was procured by fraud is a question for the determination of a jury.' [Cits.]" *Lewis v. C. & S. Nat. Bank,* 139 Ga. App. 855, 862 (229 SE2d 765) (1976).

I would hold that appellees, in their individual capacities, are not precluded as a matter of law from raising defenses to their guaranty agreements, notwithstanding that they renewed the underlying obligations in their corporate capacities.

I am authorized to state that Justice Gregory joins in this dissent.