A98A0760. LAWSON et al. v. HABERSHAM BANK.
(503 SE2d 341)

RUFFIN, Judge.

Howard and Jenny Lawson sought an interlocutory injunction to prohibit Habersham Bank from foreclosing on their home located in Stephens County. The Superior Court of Habersham County denied the injunction and specifically ruled that the Lawsons were not entitled to an interlocutory injunction against the sale of the Stephens

County property. The Lawsons appealed, and for reasons which follow, we affirm.

"We may not reverse the grant or denial of preliminary injunctive relief absent an abuse of discretion, 'or, as alternatively stated, unless there was no evidence on which to base the ruling.' [Cits.]" *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 534 (484 SE2d 259) (1997). In light of these principles, this case shows that the Lawsons purchased a poultry farm located in Habersham County (the "farm") in December 1993. Habersham Bank agreed to lend the Lawsons the money for this purchase in the amount of $287,217.65 and took a deed to secure debt with a power of sale on the farm.

In the verified petition for interlocutory injunction, the Lawsons alleged that in 1994, after they began raising chickens on the poultry farm, they were advised by Fieldale Farms to make needed improvements on the farm's chicken houses. The Lawsons discussed financing such improvements with Habersham Bank. The bank agreed to provide a $35,000 line of credit for the Lawsons to complete the improvements if the Lawsons would secure the loan with their Stephens County home. On August 1, 1995, the Lawsons executed a security deed on their home securing the $35,000 line of credit. In addition to providing that the Lawsons' home would serve to secure the debt, the security deed also stated that their home would serve as collateral for "such additional sums as may now be due by Grantor to Grantee or hereafter incurred by Grantor, whether directly, indirectly, as principal, endorser, guarantor, or otherwise. . . ." The security deed on the home also included an "open-ended" or "dragnet clause" which provided that the home would secure "any renewals, extensions, or consolidations of any of the debts, notes, advances or indebtedness described" in the deed. The line of credit became due on October 30, 1995.

On October 5, 1995, the Lawsons signed a new promissory note (the "consolidation note") to Habersham Bank in the amount of $332,420.86, which combined the loans for the farm and their home. The consolidated note required one monthly payment and specifically stated the purpose of the loan was to "combine notes #01/03 purchase and upgrade poultry houses" and that both the farm and the Lawsons' home constituted the secured property for the loan. After the refinancing, the property improvements were completed. Habersham Bank obtained a new appraisal that showed the market value of the farm as of March 21, 1996, as $410,000.

The Lawsons defaulted on the consolidated note during the fall of 1996. Pursuant to the power of sale contained in the security deeds for the Stephens County house and the Habersham County farm, Habersham Bank commenced non-judicial foreclosure proceedings on the farm and the home. The notices of sale under power for both the

farm and the home referenced the default of the consolidated note and a description of each parcel of property. Subsequently, the Lawsons filed a verified petition for injunction in the Superior Court of Habersham County to enjoin Habersham Bank from foreclosing on their home, but did not petition to enjoin the sale of the farm.

On August 5, 1997, the trial court temporarily enjoined Habersham Bank from foreclosing on the Lawsons' home. However, this ruling did not affect the farm, and consequently, Habersham Bank foreclosed on the farm on August 5, 1997. Habersham Bank did not confirm the foreclosure sale of the farm.

Following evidentiary hearings, the trial court issued an order denying the Lawsons' petition to permanently enjoin Habersham Bank from foreclosing on their home. The trial court held that Habersham Bank's attempt to foreclose on their home was not an action to satisfy a deficiency judgment on the sale of the farm and therefore was not barred by the bank's failure to obtain confirmation of its prior foreclosure sale of the farm. On appeal, the Lawsons assert that the trial court's decision was erroneous. We disagree.

The confirmation statute provides: "When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, . . . and at the sale the real estate does not bring the amount of the debt secured by the deed, . . . no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale . . . and shall obtain an order of confirmation and approval thereon." OCGA § 44-14-161 (a). "A deficiency judgment is the 'imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt.' The Georgia courts have determined whether a deficiency judgment is being sought in a variety of circumstances. For example, when a secured creditor seeks to satisfy its claim from property of a debtor other than the security itself, the creditor is in substance seeking a deficiency judgment. After an initial foreclosure under a deed with a 'dragnet clause,' a subsequent foreclosure under a separate deed securing separate property is not a deficiency judgment, but is a separate contractual remedy of the creditor not subject to the confirmation requirement. *Salter v. Bank of Commerce*, 189 Ga. 328, 332 (6 SE2d 290) (1939)." (Citations and punctuation omitted.) *C.K.C., Inc. v. Free*, 196 Ga. App. 280, 282 (2) (395 SE2d 666) (1990).

The Supreme Court addressed a similar situation to the instant case in *Salter*. In that case, the borrower executed a 1931 security deed to secure several loans made between 1931 and 1936. In 1936, the borrower executed a second security deed to secure one of the loans. The security deeds contained a "dragnet clause." The borrower defaulted on the loans, and the bank foreclosed on the 1931 security

deed. The bank did not confirm the sale. When the bank proceeded to foreclose on the 1936 deed, the borrower filed an injunction contending the bank was barred from foreclosing on the 1936 deed because the previous foreclosure sale had not been confirmed. The trial court denied the borrower's petition for injunction. In affirming the trial court's decision, the Supreme Court of Georgia held that the bank was not required to confirm the initial foreclosure under a deed with a "dragnet clause," because the subsequent foreclosure was under a separate security deed securing separate property. The Court held that the subsequent sale under power of separate property is a contractual remedy of the creditor and is not barred by a failure to meet the confirmation requirement. Id. at 331-332.

In this instance, the Lawsons initially executed two separate loans at two separate times and gave as security an interest in two separate parcels of real property. Subsequently, the Lawsons executed a consolidation loan that combined the debts, but the two separate parcels of real property remained as security for the original loans. The language in the security deed for the Lawsons' home contained express language that was similar to the "dragnet clause" discussed in *Salter*. Moreover, language in the consolidated note provided that the Lawsons' home would serve to secure any such additional sums that the Lawsons currently owe to Habersham Bank or that may later be incurred by the Lawsons. Pursuant to the "dragnet clause," the home remained as security for both loans. Consequently, we do not find the subsequent consolidation of the loan determinative because the loan agreement expressly states that the security deed for the Lawsons' home remained effective after any such consolidation. Thus, we find two debts remained and were secured by two separate parcels of real property. Habersham Bank's attempt to foreclose on the Lawsons' home was a separate contractual remedy. "As the [confirmation act] does not inhibit sale, under a power contained in a security deed, of property *other than property previously sold* by [Habersham Bank], which failed to bring the amount of the debt, it is inapplicable, and can not be invoked as a bar by the [Lawsons] in a suit to enjoin [Habersham Bank] from selling such other property under power of sale." (Emphasis supplied.) Id. at 332 (b).

Finally, *Tufts v. Levin*, 213 Ga. App. 35 (443 SE2d 681) (1994), relied on by the Lawsons in their appeal, is not controlling. Unlike the instant case, *Tufts* involved two debts secured by a single parcel of property in which the creditor had a security interest. In *Tufts*, the borrowers executed two separate notes to the lender for the purchase of a house, a 30-year purchase money note and a balloon note. The purchase money note was secured by a purchase money security deed, and the balloon note was secured by a separate security deed,

but for the same property. When the borrowers defaulted on the payments due under the note, the lender foreclosed under the power of sale contained in the purchase money security deed but did not confirm the sale. The lender subsequently sued on the balloon note. We determined that the lender's subsequent suit on the balloon note was an action to obtain a deficiency judgment for the balance of the purchase money note that remained unpaid after foreclosing on the purchase money security deed, and without confirmation, the lender was barred from recovery. Id. at 39.

The fact that there was a single parcel of property that was used as security for both notes weighed heavily in our decision. *Tufts*, 213 Ga. App. 39. However, here, there were two separate parcels of real property that were provided as consideration for two separate obligations, the first being the purchase money for the farm and the second being the line of credit for improvements on the farm that was secured by the farm and the home. Consequently, we find *Tufts* is factually distinguishable from the instant case. Accordingly, the trial court did not abuse its discretion in denying the Lawsons injunctive relief. *Allen*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JUNE 25, 1998.

*Douglas L. Henry*, for appellants.
*Thomas E. Austin, Jr.*, for appellee.